**Ernest SIMON et al., Appellants,**

v.

**ESTATE of W. P. ALLEN, Deceased, et al., Appellees.**

No. 5225.

Court of Civil Appeals of Texas, Waco.

July 12, 1973.

Rehearing Denied Aug. 9, 1973.

Hancock, Bellard, Gay & Kaye, Charles R. Hancock, Otto A. Yelton, Jr., Dickinson, Sheinfeld, Maley & Kay, Robert C. Maley, Jr., Houston, Werner Galleski, New York City, for appellants.

Thomas Osa Harris, Vinson, Elkins, Searls & Smith, John B. Holstead, Houston, for appellees.

HALL, Justice.

This action was brought by Elizabeth F. Allen, Individually and as Independent Executrix of the Estate of W. P. Allen, Deceased, against Ernest Simon, Ernst Cohn & Co., and Melvin A. Behring and Arthur

H. Behring, dba Behring & Behring, to recover damages allegedly suffered by her husband as the result of an asserted purchase by him on September 14, 1966, of several thousand warehouse receipts from Cohn & Co. which represented bales of cotton stored in the warehouse of Behring & Behring. First City National Bank of Houston, Texas, (hereinafter "First City" or "Bank") intervened, alleging that it advanced the money to Allen with which he made the purchase from Cohn & Co., that Allen pledged the receipts "and the cotton purportedly covered thereby" to the Bank as security for the loan; and among other things, that it sustained damages as the result of a "mutual mistake" on the part of Simon, Cohn & Co. and the Bank, regarding an alleged lack of cotton behind some of the warehouse receipts.

The record shows without dispute that Behring & Behring was a partnership, but that all of its activities were conducted solely by Melvin A. Behring. Therefore, our reference to Behring will mean Melvin Behring and the partnership.

Under the name of Allen and Company, Allen operated as a successful cotton broker in Houston for over thirty years. Behring was located in Dallas. He bought and sold cotton. Additionally, he was the owner of several cotton warehouses. Simon, a Houston resident, through Cohn & Co., also functioned as a cotton merchant. Allen, Simon individually, and Cohn & Co., all banked with First City. Behring banked at Dallas.

Allen began financing Behring in 1960. The source of Allen's funds was First City. Simon, through Cohn & Co., also financed Behring during 1966. Simon's source of money was also First City. Henry Oliver, a senior vice-president of First City, handled the transactions with Allen and Simon on behalf of the Bank.

Unlike Allen's financing arrangements with Behring, the dealings between Behring and Simon were not straight-forward financing transactions, but were structured by them to appear as purchases and sales of cotton. When Behring paid a loan, Cohn & Co. returned receipts to Behring by means of a sales invoice to Toyo Cotton Company, a large cotton firm operating in Dallas. This arrangement gave the outward impression that Cohn & Co. was a successful cotton merchant doing a large volume of sales. The cotton involved was stored in Behring's warehouses. This permitted him to remove the cotton from storage without redeeming or canceling the warehouse receipts held by Allen, Cohn & Co., and the Bank. Under written agreements with Behring, Simon expressly reserved the right to sell the cotton evidenced by the warehouse receipts held by Cohn & Co. at any time.

Around the 1st of September, 1966, Cohn & Co. began invoicing the cotton directly back to Behring, rather than through Toyo, but still using sales invoices. By this time Behring was experiencing serious financial difficulties, and Simon had become increasingly concerned and anxious regarding Behring's payments of his obligations to Cohn & Co. Finally, drafts drawn by Cohn & Co. on Behring on September 7th for $250,142.61, and on September 8th for $276,096.88, both with sales invoices and warehouse receipts attached, which had been deposited to the account of Cohn & Co. at First City and upon which immediate credit had been granted by the Bank, were dishonored by Behring.

Between September 9th and September 13th, checks totaling about $550,000 were given by Behring to Allen. Allen deposited the checks with First City and was given immediate credit. The checks were returned because of insufficient funds.

On September 13, 1966, Behring went to Houston and met with Allen and Oliver to discuss payment of the bad checks he had given to Allen. The meeting culminated in an agreement by Allen to borrow enough money from the Bank to purchase the cotton represented by the warehouse receipts which were attached to the Cohn & Co./Behring Drafts of September 7th and

8th, and to purchase another group of warehouse receipts covering an additional 3,775, bales of cotton (with an invoice value of $343,052.74) which was the balance of the Behring cotton held by Cohn & Co. The Bank's loans to Allen that day, when added to his prior indebtedness, created a total indebtedness by him to First City of $1,585,066.42.

On the evening of September 13th, Oliver told Simon by telephone of the arrangement that had been made for Allen to buy all the Behring cotton from Cohn & Co. The next day, Allen delivered two checks aggregating $870,336.80 to Simon in payment of the warehouse receipts that were attached to the unpaid drafts of September 7th and 8th, and in payment of the additional sales invoice held by Cohn & Co. on Behring cotton.

The two checks from Allen were deposited to the Cohn & Co. account at First City. Cohn & Co. paid the Bank $526,707.-89 to clear the drafts of September 7th and 8th, which had been charged back to the account of Cohn & Co. when not paid by Behring, together with minor charges for handling the drafts and their dishonor. Within one week following September 14th, Simon withdrew $267,850 from the account of Cohn & Co. and deposited it to his personal account.

On November 4, 1966, Allen discovered that much of the cotton represented by the warehouse receipts he received from Cohn & Co. was missing. Soon thereafter Behring filed an application in bankruptcy. In early December, Allen died.

Trial was to a jury. Answering special issues numbered as follows, it made findings, among others, that:

(1, 2, 3, and 4). On September 14, 1966, Cohn & Co. transferred the questioned warehouse receipts to Allen and sold the cotton represented by the receipts to Allen.

(5, and 7). 7,459 bales of cotton represented by the warehouse receipts were missing from the warehouse at the time of the transfer and sale from Cohn & Co. to Allen.

(6 and 8). Allen paid Cohn & Co. $678,628.31 for the missing bales.

(31). First City granted, and Cohn & Co. withdrew, the immediate credits created by the deposit of the drafts dated September 7th and September 8th, 1966, totaling $526,377.61, as a result of a mutual mistake of fact.

Judgment was rendered on the verdict in favor of plaintiff and First City against Simon, Cohn & Co., and Melvin A. Behring, jointly and severally, for $475,078.03; and for plaintiff against Simon, Cohn & Co., and Melvin A. Behring, jointly and severally, for the additional sum of $203,550.28; and for plaintiff against Melvin A. Behring for the further sum of $412,248.26. Plaintiff's suit against Arthur H. Behring was dismissed with prejudice, apparently upon plaintiff's motion.

Only Simon and Cohn & Co. have appealed. In 28 points of error they challenge certain actions of the trial court, and some of the findings, and the judgment, for sundry reasons. We affirm the judgment.

Pertinent, here, V.T.C.A., Bus. & C., provides as follows:

Sec. 7.507. Where a person . . . transfers a document of title for value [otherwise than as a mere intermediary acting with authority and in good faith], then unless otherwise agreed he warrants to his immediate purchaser . . . (3) that his . . . transfer is rightful and fully effective with respect to the title to the document and the goods it represents.

Sec 2.313. (a) Express warranties by the seller are created as follows: . . . (1) Any affirmation of fact . . . made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an ex-

press warranty that the goods shall conform to the affirmation . . . (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description . . .

Sec. 2.314. [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . .

Sec. 2.711. Where the seller fails to make delivery . . . then with respect to any goods involved . . . the buyer may . . . [recover] so much of the price as has been paid.

Appellants argue without benefit of jury finding that Cohn & Co. was only an "intermediary" in its dealings with Allen; and that there was no "sale" of cotton by the Company to Allen as found by the jury.

■ Appellants have no points of error in which they assert that the jury's answers to special issues 1 through 8 are not supported by the evidence, or that those answers should be disregarded for any reason. The only complaints presented by points of error that relate to those issues deal with the failure of the trial court to define "sale" and "transfer" as requested by appellants in their objections to the charge. No definitions of the words were submitted by appellants to the trial court. Thus, any error in the court's failure to define the terms was waived. Rule 279, Tex.Rules Civ.Proc. The findings reflected by the answers to the first eight issues stand unchallenged by appellants.

■ Cohn & Co. made express warranties of quantity by stating on its three invoices in question the number of bales of cotton sold thereby, totaling 9,612 bales. When Cohn & Co. sold nonexistent cotton to Allen, as found by the jury, it breached both express and implied warranties set forth in the Texas Business and Commerce Code, supra; and thereby rendered itself liable to Allen for at least the amount he paid therefor. This is sufficient to support the judgment awarded plaintiff against Cohn & Co.

■ Appellants contend that the evidence is legally and factually insufficient to support the finding that the granting of immediate credits by First City on the drafts of September 7th and 8th, and Simon's withdrawal thereof, resulted from a mutual mistake of fact. We disagree. Oliver testified that if he had possessed any knowledge or suspicion "of the shortage of cotton behind these warehouse receipts," then he would not have allowed Cohn & Co. credit on the drafts. Simon testified that when he entered into the transactions on September 7th, 8th and 14th, he believed there was cotton behind the receipts; and that if he had known otherwise he "would not have entered into any transaction with the bank." There is other evidence supporting the finding, and in the light of the entire record it is not against the great weight and preponderance of the evidence.

■ One who has entered into a contract as the result of a mutual mistake of a material fact may avoid the contract and recover the damages he has suffered thereby. 38 Tex.Jur.2d 741, Mistake, Sec. 4. Judgment for the Bank on the ground of mutual mistake was proper.

■ Simon says that judgment should not have been rendered against him, individually. The record shows without dispute that at the time in question Simon owned 99.6% of the stock of Cohn & Co.; that he was its president and exercised complete and independent control of the company, and that it was merely a conduit for the transaction of what was actually his own private business. These circumstances support the conclusion of the trial court that he should be held personally liable for the corporate transactions. Moore v. Savage (Tex.Civ.App., 1962) 359 S.W.

2d 95, 97, writ refused, n.r.e. (Tex.Sup., 1962), 362 S.W.2d 298; 14 Tex.Jur.2d 134, Corporations, Sec. 13.

We have carefully considered, and over-rule, appellants' remaining points of error. In some, the matters complained of have not been preserved for appellate review; the others do not present reversible error.

The judgment is affirmed.